# 24-1662-cv

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**KEFILWE LEKUNTWANE, *and all other similarly situated Employees*,**

Plaintiffs - Appellees,

v.

**HELP AT HOME CT, LLC, ALZHEIMER'S AND DEMENTIA CARE, LLC, HOMECARE CONNECTIONS, LLC, MARY ANN CIAMBRELLO,**

Defendants – Appellants,

On Appeal from the United States District Court
For the District of Connecticut, Case No. 3:20-cv-00386 (RNC)

## BRIEF OF PLAINTIFFS-APPELLEES

Richard E. Hayber, Esq.
**HAYBER, McKENNA & DINSMORE, LLC**
750 Main Street, Suite 904, Hartford, CT 06103
Tel. (860) 522-8888
rhayber@hayberlawfirm.com
*Attorney for Plaintiffs-Appellees*

Nitor V. Egbarin
**LAW OFFICE OF NITOR V. EGBARIN, LLC**
100 Pearl Street, 14th Floor, Hartford, CT 06103-3007
Tel: (860) 249-7180
Nitor@Egbarin.com / NEgbarin@aol.com
*Co-Counsel for the Plaintiffs-Appellees*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………iii

I.    STATEMENT OF THE CASE……………………………………………1

    a.    The Parties' Settlement Discussions Resulted in the Execution of a Memorandum of Understanding ("MOU")………………………… 1

    b.    The Parties' Discussions Resulted in Lekuntwane Signing a Written Settlement Agreement on September 30, 2021 ("Final Settlement Agreement")………………………………………3

    c.    Help at Home's Counsel Withdrew from their Representation After Lekuntwane Signed the Final Settlement Agreement………………………………………… 5

    d.    Lekuntwane Relied on the Final Settlement Agreement in the Briefing of Her Motion to Enforce the Settlement Agreement and at Oral Argument ………………………………6

    e.    The District Court Relied on the Final Settlement Agreement to Hold that the Parties Had an Enforceable Settlement Agreement………………………………………… 7

II.    SUMMARY OF THE ARGUMENT……………………………………… 9

III.    ARGUMENT……………………………………………………………10

    a.    The District Court Correctly Enforced the Parties' Settlement Agreement……………………………………………10

        i.    Standard of Review………………………………… 10

        ii.    The District Court Correctly Held that the Parties Entered into an "Enforceable Final Settlement Agreement Under Connecticut Law"………………………………………… 10

        iii.    The MOU Was a Final and Enforceable Agreement…………13

b.  The District Court Correctly Held That the Requirement that the Court Approve the Parties' Settlement Did Not Render the Settlement Agreement Unenforceable………………… 26

c.  The District Court Did Not Err When it Granted Preliminary and Final Approval…………………………………… 28

CERTIFICATION OF COMPLIANCE…………………………………………  30

CERTIFICATION OF SERVICE…………………………………………………31

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

*Aquarion Water Co. of Conn. v. Beck Law Prod. & Forms, LLC*,
98 Conn.App. 234 (2006)……………………………………………………  12

*Audubon Parking Assoc. Ltd. P'Ship. v. Barclay and Stubbs, Inc.*,
225 Conn. 804 (1993)…………………………………………………… 8, 22

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)……………9

*Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320 (2d Cir.1997)…………  10

*Flores v. Urciuloi*, 2022 WL 987353 (E.D.N.Y. Jan. 10, 2022)…………………  21

*Kidder v. Read*, 150 Conn.App. 720 (2014)………………………………………10

*Omega Eng., Inc v. Omefa, S.A.*, 432 F.3d 437 (2d Cir. 2005)……………………10

*Powell v. Omnicon*, 497 F.3d 124 (2d Cir. 2007)…………………………………14

*Santos v. Massad-Zion Motor Sales Co., Inc.*, 160 Conn.App. 12 (2015)……21, 23

*Suarez v. SCF Cedar, LLC*, 2016 WL 6601547 (S.D.N.Y. Mar. 14, 2016)……… 14

*Williams v. Playscripts, Inc. and Sean Cercone*, 2024 WL 3823198
(E.D.N.Y. Aug. 13, 2024)……………………………………………26, 27, 28

*Willow Funding Co.* v. *Grencom Associates*, 63 Conn. App. 832 (2001)…… 13, 14

*Wittman v. Intense Movers, Inc*., 202 Conn.App. 87 (2021)…………………  8, 23

*450 Federal Road, LLC v. Rugova*, 2024 WL 1739315 (Conn. Super. Ct.
Apr. 17, 2024)……………………………………………………………  13, 20

**<u>Other</u>**
Black's Law Dictionary (11th ed. 2019)……………………………………… 13

17A Am. Jur. 2d Contracts § 1990 (2014) …………………………………… 13

## I.    **STATEMENT OF THE CASE**

### *a. The Parties' Settlement Discussions Resulted in the Execution of a Memorandum of Understanding ("MOU")*

This lawsuit arises out of alleged violations of the Fair Labor Standards Act, ("FLSA") and the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-68, et seq. ("CMWA"). On March 23, 2020, Plaintiff Kefilwe Lekuntwane ("Lekuntwane") filed the Collective and Class Action Complaint. (ECF No. 1). On June 16, 2020, Defendants Help at Home, LLC, Alzheimer's and Dementia Care, LLC, Homecare Connections, LLC, and Mary Ann Ciambriello (hereinafter collective referred to as "Help at Home") filed a Joint Request for Early Settlement Conference with a Magistrate Judge and Motion for Stay. (ECF No. 18). On June 19, 2020, the Court granted in part, the Joint Request for Early Settlement Conference, but did not rule on the Motion for Stay. (ECF No. 19).

The Court initially referred the case to Magistrate Judge William I. Garfinkel to conduct a settlement conference. (ECF No. 22). On January 29, 2021, the case was referred to the US Magistrate Judge Joan G. Margolis for a ruling on the Motion for Stay and to conduct a settlement conference. (ECF Nos. 31-32). On March 15, 2021, the parties attended a four hour and twenty-minute settlement conference with Magistrate Judge Margolis, but the parties did not settle. (ECF No. 35). The Court scheduled another settlement conference for April 8, 2021 for continued negotiations. (*Id.*).

On April 8, 2021, the parties attended a second settlement conference with Magistrate Judge Margolis, lasting six hours and fifteen minutes. (ECF No. 36). During the settlement Conference, the Parties settled the case and agreed on essential terms that were set forth in an MOU. (App. 49-53). At precisely 3:32 p.m., counsel for the Defendants sent an email with an MOU attached, saying:

> Judge Margolis, Rick, and Nitor- We have agreed on the gross amount of the settlement ($1,340,000) and the general structure of the payments ($300K after approval of agreement, $200K 6 months after that, and the balance paid over the course of 60 months following that payment). That being said, there are several details that need to be worked out to finalize the resolution of this matter. Toward that end, I am attaching a revised draft of the MOU you sent highlighting areas we feel remain unresolved.

(App. 50).

Lekuntwane's counsel responded at 3:33 p.m., "Thank you. This is fine. We have a deal." (App. 49). With the case settled, the Court denied the Motion to Stay without prejudice. (ECF No. 40). The Court scheduled a settlement conference for August 10, 2021, which both parties attended, to discuss the deadlines for filing motion papers for preliminary approval. (ECF No. 41). On August 11, 2021, the Court ordered:

> As discussed during the continued settlement conference held on Zoom yesterday (Dkt. #41), counsel agreed to the following schedule: The Joint Motion for Preliminary Approval of Settlement and Approval of Proposed Notice of Settlement, and all necessary related filings, shall be filed on or before August 20, 2021.

(ECF No. 42).

On August 20, 2021, the deadline to jointly move for preliminary approval,

Help at Home sent the following message to Judge Margolis on consent:

> Dear Judge Margolis- Although the parties anticipated filing the settlement package in this matter for your review today, we are unable to do so. We are still working out final language in the agreement and memorandum of law, who should be included in the class list, and whether an adjustment of the settlement amount is warranted. We believe we will reach an accord or impasse fairly soon, so we do not want to change the September 3, 2021 conference date at this time. We are planning to get the finalized package to you by next Friday, August 27, 2021. We will let you know if we need any further assistance from you. Please let us know if this is acceptable to you.

(App. 377-78).

The Court scheduled a status/settlement conference for September 23, 2021,

which the parties attended, and during which they agreed to a revised schedule:

> As discussed during the continued status/settlement conference held on Zoom today (Dkt. #46), counsel agreed to the following schedule: The Joint Motion for Preliminary Approval of Settlement and Approval of Proposed Notice of Settlement, and all necessary related filings, will be filed on or before October 1, 2021. A hearing on this motion, to be held on Zoom, will be held on October 15, 2021, at 2:30 p.m.

(ECF No. 47).

### b. The Parties' Discussions Resulted in Lekuntwane Signing a Written Settlement Agreement on September 30, 2021 ("Final Settlement Agreement").

On September 29, 2021 through September 30, 2021, the Parties

communicated about the outstanding issues that they needed to resolve to finalize a

written agreement. (App. 88-92, 148-50). On September 30, 2021, the Parties

3

exchanged emails in which Help at Home sent Lekuntwane a settlement agreement to sign, which she did. (App. 91-92, 148-49). At 1:56 p.m., Lekuntwane's attorney, Nitor Egbarin emailed Help at Home's attorney, Maura Mastrony:

> Are we all set to file settlement approval papers tomorrow? Ms. Lekuntwane needs to sign the agreement too. Can you send the agreement now so I can forward it to Ms. Lekuntwane for her to sign. Thanks.

> (App. 91-92).

> At 1:58 p.m., Attorney Mastrony responded:

> No we are not. I am going through the preliminary order now. Then it has to go to our client. I can send you the agreement, but the exhibits are not finalized, as I am still looking at the preliminary order you just sent.

(App. 91).

At 2:00 p.m., Attorney Egbarin replied: "Please send the final agreement without the watermark and I will forward it to Ms. Lekuntwane for signing." (App. 91). At 2:03 p.m., Attorney Mastrony emailed Attorney Egbarin the written settlement agreement. (App. 91). At 3:10 p.m., Attorney Egbarin emailed Help at Home's counsel back the Final Settlement Agreement, signed by Lekuntwane. (App. 149).

On October 01, 2021, Attorney Egbarin emailed Help at Home's counsel, asking for a countersigned copy of the agreement, to which Attorney Mastrony responded: "Nitor – It has not been signed by our client.

We will hopefully be able to get it signed early next week. Thanks, Maura." (App. 148).

On the same day, Help at Home moved for an extension of time until October 8, 2021 to file Joint Motion for Preliminary approval of settlement and Approval of Proposed Notice of Settlement, (ECF No. 49), which the District Court granted on October 05, 2021. (ECF No. 51).

### c. *Help at Home's Counsel Withdrew from their Representation After Lekuntwane Signed the Final Settlement Agreement*

On October 4, 2021, attorney Craig T. Dickinson filed a Motion to Withdraw his representation of Help at Home, (ECF No. 50), which was granted. (ECF No. 53). On October 15, 2021, attorney Maura A. Mastrony filed a Motion to Withdraw her representation of Help at Home,  (ECF No. 52), which was ultimately granted. On December 16, 2021, the Court entered the following Order:

> ORDER taking under advisement [Doc. No. 52] Motion to Withdraw as Attorney. ***As defense counsel appropriately has pointed out in the pending motion, "[t]he parties arrived at a settlement in this matter following a settlement conference on April 8, 2021."*** (Dkt. #52, at 1; see also Dkts. ##18-19, 22, 32, 34-35, 39). Thereafter, considerable time was expended by counsel and this Magistrate Judge in fine tuning and finalizing the paperwork necessary to consummate a settlement in this FLSA and CMWA class action. (See Dkts. ##41-49, 51). As the pending motion indicates, defense counsel forwarded the final settlement papers to defendants on Wednesday, October 6, 2021, in anticipation of a preliminary fairness hearing scheduled for October 15, 2021; defendants have failed to sign the settlement agreement and have failed to respond to their attorneys since September 2, 2021. (Dkt. #52, at 1). Thus, defense counsel argues that defendants' "failure to

5

communicate with them renders on-going representation unworkable[,]" and "[d]ue to this breakdown in communication, [defense counsel] is seeking the Court's permission to withdraw as counsel for [d]efendants in this matter." (Id. at 1-2).

(ECF No. 55) (emphasis added).

### d. Lekuntwane Relied on the Final Settlement Agreement in the Briefing of Her Motion to Enforce the Settlement Agreement and at Oral Argument

On March 03, 2022, Lekuntwane moved the District Court to enforce the settlement agreement consummated between the Parties. (ECF No. 65, pg. 1). Lekuntwane noted in her memorandum in support of that motion that she executed a written settlement agreement presented to her by Help at Home. (*Id.* at pg. 8) ("On September 30, 2021, Defendants' [*sic*] sent their approved settlement agreement to the Plaintiff. The Plaintiff signed the approved settlement agreement the same day."). On April 19, 2022, Lekuntwane filed a copy of the Final Settlement Agreement on the docket. (ECF No. 72). On April 20, 2022, Lekuntwane supplemented the record with argument and evidence relating to the Final Settlement Agreement:

The foregoing establish that all the nonessential terms of the MOU were resolved, and the parties' deal is contained in the 'Settlement Agreement' which the Defendants approved for the Plaintiff to sign and, which she signed.

 (ECF No. 75, pg. 5).

On August 18, 2021, the District Court convened an evidentiary hearing on Lekuntwane's motion to enforce. (App. 151). The parties stipulated to the exhibits for that hearing, including the emails the parties exchanged between September 29, 2021 and October 01, 2021 and the settlement agreement Lekuntwane signed. (ECF No. 86). Help at Home declined to offer live witness testimony at the hearing even though Defendant Ciambriello appeared at the hearing. (App. 151-55). At oral argument, Lekuntwane's counsel argued that the Final Settlement Agreement is a binding settlement:

> THE COURT:     ... Let me put the question to you. Why are you relying on the MOU instead of the so-called final agreement in September. I know you mentioned the absence of the signature by the defendant. Is there any other reason?

> MR. EGBARIN: ... But I agree with you, **the original agreement that was concluded and sent to the plaintiff to sign, is the deal actually. She signed it. It's a deal.** They offered us, we accepted by signing, and it's a done deal.

(App. 166) (emphasis added).

### e.  The District Court Relied on the Final Settlement Agreement to Hold that the Parties Had an Enforceable Settlement Agreement

On January 23, 2024, the District Court orally ruled on Lekuntwane's motion to enforce the settlement agreement. (App. 174-90). The District Court issued two holdings. First, it held that even if the MOU was not enforceable in April 2021, the Parties' subsequent conduct cured any defects:

7

After careful review of the entire record, I find that none of the 8 items on the defendants' list rendered the MOU unenforceable. As shown by emails subsequently sent by defendants' then-counsel to plaintiff's counsel, what was essential to the defendants was getting comprehensive releases from all class members in exchange for payment of the total settlement amount of $1.34 million, which was approximately half the amount demanded by plaintiff's counsel. Moreover, in agreeing to the terms set forth in the MOU, the parties bound themselves to act in good faith to reach agreement on the items on the defendants' list, including finalizing the class list, as they subsequently did. Even assuming the MOU was not sufficiently complete and definite to be enforceable, as defendants argue, any such alleged defect was cured through the parties' subsequent communications with each other and Magistrate Judge Margolis, **which resulted in their manifestations of assent to a comprehensive written agreement suitable for submission for judicial approval**. See *Wittman v. Intense Movers, Inc*., 202 Conn.App. 87 (2021), aff'g 2019 WL 2603545 (May 20, 2019). As Magistrate Judge Margolis has stated, "considerable time was expended by counsel and [the court] in fine tuning and finalizing the paperwork necessary to consummate a settlement in this FLSA and CMWA class action." Order Taking Under Advisement Motion to Withdraw as Attorney, ECF 55. That the settlement agreement has yet to be signed by the defendants does not make it any less enforceable. When parties who plan to sign a written instrument agree on all the essential terms, they make a binding contract, the terms of which include an obligation to execute a final writing.

(ECF No. 95).

In its Oral Ruling, the District Court explained:

… I come to the same conclusion as was reached in *Wittman [v. Intense Movers, Inc.*, 202 Conn.App. 87 (2021)]. It appears to me that even if the MOU lacked sufficient completeness or definiteness under *Audubon [Parking Assoc. Ltd. P'Ship. v. Barclay and Stubbs, Inc.*, 225 Conn. 804 (1993)] to make it enforceable on its own, **any such defect was undoubtedly cured in the process that followed** resulting in an enforceable final settlement agreement under Connecticut law.

(App. 180-81) (emphasis added).

Second, the District Court held that the fact that the Parties' FLSA settlement required court-approval under the law did not render the Final Settlement Agreement unenforceable:

> Defendants further contend that no enforceable agreement has been reached because, under *Cheeks v. Freeport Pancake House, Inc.*, 795 F.3d 199 (2d Cir. 2015), settlement of a claim under the FLSA requires court approval. However, the requirement of court approval does not prevent formation of a binding contract whereby the parties commit themselves to act in good faith to seek court approval.

(ECF No. 95).

In its Oral ruling, the Court made clear that its' holding applied to the Final Settlement Agreement, not the MOU. (App. 182-83).

## II.    SUMMARY OF THE ARGUMENT

The District Court correctly granted Lekuntwane's Motion to Enforce the Settlement Agreement. The Final Settlement Agreement signed by Lekuntwane is an enforceable contract. It contains all of the material terms of the agreement. Help at Home's refusal to sign the Agreement does not defeat the enforceability of the contract. Further, the MOU is a binding contract because it contains the material terms of the agreement. Finally, the District Court correctly held that judicial requirement that it approve the FLSA settlement did not prevent the formation of a binding contract.

9

### III.  ARGUMENT

#### a. *The District Court Correctly Enforced the Parties' Settlement Agreement*

##### i. Standard of Review

This Court "review[s] a district court's factual conclusions related to a settlement agreement, such as whether an agreement exists or whether a party assented to the agreement, under the clearly erroneous standard of review." *Omega Eng., Inc v. Omefa, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005) (citing *Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320, 322 (2d Cir.1997)). This Court "review[s] *de novo* a district court's legal conclusions with respect to its interpretation of the terms of a settlement agreement, and its interpretation of state law. *Id.* (internal citations omitted).

##### ii. The District Court Correctly Held that the Parties Entered into an "Enforceable Final Settlement Agreement Under Connecticut Law."

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous … [and] when the parties do not dispute the terms of the agreement." *Audubon*, 255 Conn. at 811. "A contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation." *Wittman*, 202 Conn.App. at 98 (quoting *Kidder v. Read*, 150 Conn.App. 720, 734 (2014)).

Here, the District Court held that the Final Settlement Agreement was a binding, enforceable agreement. The District Court's ruling was not limited to the MOU. It acknowledged that the MOU might not be "sufficiently complete and definite to be enforceable," but when considered with the record, that an enforceable contract existed. The District Court considered the MOU, the negotiations with Magistrate Judge Margolis, the emails between the Parties, and the Final Settlement Agreement. Lekuntwane argued in her briefing and at oral argument that the Final Settlement Agreement "is the deal[.]" (App. 166). The District Court questioned both parties about the Final Settlement Agreement. Help at Home did not object to the District Court's consideration of the Final Settlement Agreement. The District Court relied on this evidence and argument to enforce the Final Settlement Agreement, which it called "a comprehensive written agreement suitable for judicial approval." (ECF No. 95).

Help at Home does not meaningfully argue in its Appellant Brief that Final Settlement Agreement is not a binding agreement. Help at Home does not contend that the terms of the Final Settlement Agreement are unclear and ambiguous or that anything remains to be done for that document to be a contract. Help at Home's attorneys emailed Lekuntwane's attorneys the Final Settlement Agreement for her signature so that the parties could consummate the agreement. Help at Home did so, because at that time, it approved the terms of the Final Settlement Agreement as

11

written, and the Parties owed the District Court a joint motion for preliminary
approval the next day. Thus, assuming the MOU was not a contract at the time the
Parties agreed to it, Help at Home offered the Final Settlement Agreement on the
terms contained in that document, which terms were accepted by Lekuntwane by
her signing the document. Help at Home's refusal to sign the Final Settlement
Agreement does not change that their offer was accepted, therefore that a contract
exists. *Wittman*, 202 Conn.App. at 99 ("Furthermore, [p]arties are bound to the
terms of a contract ***even though it is not signed*** if their assent is otherwise
indicated."; quoting *Aquarion Water Co. of Conn. v. Beck Law Prod. & Forms,
LLC*, 98 Conn.App. 234, 239 (2006)) (alteration in the original; emphasis added).

Help at Home's argument on appeal asks this Court to elevate form over
substance. Help at Home claims that the District Court should not have considered
the signed Final Settlement Agreement. Help at Home's central argument on appeal
is that the District Court should have only decided whether the MOU itself was
enforceable when the Parties signed it because that was the document Lekuntwane
moved to enforce in her initial brief. Help at Home ignores that the Final
Settlement Agreement was part of the record and Lekuntwane relied on it in
support of that motion. The District Court properly decided the legal question
presented by Lekuntwane's motion – whether the parties had an enforceable. Its
decision should not be reversed because it did not limit its consideration to the

MOU. Even assuming the MOU was not enforceable against Help at Home on its own, the Final Settlement Agreement is. This Court should reject Help at Home's attempt to delay the payment of the money it owes the class on a technicality.[1] Accordingly, this Court should affirm the District Court.

### iii.  The MOU Was a Final and Enforceable Agreement

When the general terms of an agreement between two parties include "all the terms that [are] essential to an enforceable agreement … [u]nder the modern law of contract ... the parties ... may reach a binding agreement even if some of the terms of that agreement are still indefinite." *Wittman*, 202 Conn.App. at 99 (quoting *Willow Funding Co.* v. *Grencom Associates*, 63 Conn. App. 832, 844 (2001)).  A "material term" is "a contractual provision dealing with a significant issue such as subject matter, payment, quantity, quality, duration or the work to be done." *450 Federal Road, LLC v. Rugova*, 2024 WL 1739315, *3 (Conn. Super. Ct. Apr. 17, 2024) (quoting Black's Law Dictionary (11th ed. 2019)); *See also* 17A Am. Jur. 2d Contracts § 1990 (2014) ("In order to be enforceable, a contract must be sufficiently definite as to its 'material terms,' which include, e.g., subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production ....").

---

[1] If this Court reverses the District Court's ruling and remands this case for further proceedings, Lekuntwane will move to enforce Final Settlement Agreement.

Connecticut law recognizes that parties can enter into binding agreements, even if the essential terms of those agreements must be clarified later:

> The fact that parties engage in further negotiations to clarify the essential terms of their mutual undertakings does not establish the time at which their undertakings ripen into an enforceable agreement ... [and we are aware of no authority] that assigns so draconian a consequence to a continuing dialogue between parties that have agreed to work together. We know of no authority that precludes contracting parties from engaging in subsequent negotiations to clarify or to modify the agreement that they had earlier reached.

*Wittman*, 202 Conn.App. at 99 (quoting *Willow Funding Co.*, 63 Conn.App. at 843-44) (alterations and ellipses in the original).

Thus, even though material terms may need to be drafted, if the parties do not dispute that a contract will include those terms, then they have reached an agreement on those essential terms. *See Powell v. Omnicon*, 497 F.3d 124, 127-130 (2d Cir. 2007) (enforcing an oral settlement agreement reported to the district court against the plaintiff where the parties agreed to the amount of the settlement and that "[t]he agreement would remain confidential" even though its terms were not reduced to writing); *Suarez v. SCF Cedar, LLC*, 2016 WL 6601547, at *3 (S.D.N.Y. Mar. 16, 2016), *report and recommendation adopted,* 2016 WL 6601549 (S.D.N.Y. Nov. 7, 2016) (finding parties intended to be bound by term sheet which was a complete agreement on material terms, containing monetary and non-monetary terms, a fully contemplated timeframe, and plan for payment).

Here, the parties agreed to the material terms of the contract. The parties agreed to the amount of the settlement, the general structure and duration of the payments, who would receive payments (the FLSA and CWA classes), and that the settlement agreement would include releases and confidentiality agreements. Help at Home did not condition its agreement "subject" to agreeing on the language of the release or confidentiality agreement. The mere fact that the details of any release or confidentiality agreement needed to be written down does not mean that the parties did not agree to those terms. *See Powell*, 497 F.3d at 130. Accordingly, the MOU was enforceable.

Help at Home principally argues that the MOU was not a "final and enforceable settlement" and therefore, the District Court erred. (Appellants' Br., pgs. 13 – 19). This Court should reject Help at Home's arguments.

Help at Home first argues "that the Court's orders fail to contain detailed factual findings for this Court to review." (Appellants' Br., pg. 13). This Court should reject this argument as a ground to reverse. The District Court explained that it considered all of the exhibits. Help at Home does not argue that the District Court misinterpreted the evidence presented or failed to consider evidence presented that resulted in its ruling. Help at Home does not point out any "clearly erroneous" analysis of the evidence by the District Court.

Help at Home next argues that [a] review of the record provided by the parties shows that the MOU was not a binding agreement, that there was significant work to be done 'to finalize the resolution of this matter.'" (Appellants' Br., pgs. 13-14; quoting App. 213). Specifically, Help at Home points out that the draft MOU "highlight[ed] areas we feel remain unresolved." (*Id.* at pg. 14; quoting App. 216-17). Help at Home is mistaken. As discussed above, parties can enter into a binding agreement even when the language of an essential term must be written.

Help at Home continues this line of argument, writing that:

> All of the items identified as open and all of the subsequent discussions between counsel go to the heart of a settlement, including finalizing a class list, allocating payments, and any penalties or incentives that may be contained in the agreement. Put another way, the record demonstrates that the Court could not order that the MOU itself be enforced against Defendants because the MOU could not be enforced without subsequent negotiations between the parties and the production of a detailed settlement agreement.

(Appellants' Br., pg. 15).

Help at Home is mistaken. The District Court rejected this argument:

> The present motion seeks summary enforcement of a settlement agreement reached by the parties following mediation with Magistrate Judge Margolis whereby the defendants agreed to pay a total of $1.34 million in installments, with one-third of that amount going to attorneys' fees and costs, and the balance to members of the class pro rata, in exchange for comprehensive releases executed by all class members. Defendants' then-counsel set forth these terms of the settlement agreement, plus numerous others, in a memorandum of understanding (MOU). … After careful review of the entire record, I find that none of the 8 items on the defendants' list rendered the MOU unenforceable. As shown by emails subsequently sent by defendants'

16

then-counsel to plaintiff's counsel, what was essential to the defendants was getting comprehensive releases from all class members in exchange for payment of the total settlement amount of $1.34 million, which was approximately half the amount demanded by plaintiff's counsel.

(ECF No. 95).

The District Court's conclusion that the releases in exchange for the settlement amounts were the essential terms is correct and the fact that other items

The parties' minds met as to the essential terms. Help at Home does not claim that it had a different understanding of what these terms meant or would be. The fact that the details of the parties' agreement were not yet written does not mean that they had different understandings of what they were bargaining for.

While the parties had to finalize the class list and allocate payments, those outstanding issues are not "essential terms" sufficient to blow up an agreed upon settlement in this case. The parties agreed as to the class composition and that it would receive "2/3 … pro rata" of the settlement funds. (App. 52). The outstanding issue was ***not defining*** the class, but rather, making sure that its membership included the right employees. (*see id.*) ("Class is everyone named on spread sheet (311 names?) even those in NY, unless they show $0.00 in damages). This was not a case where the actual class definition was still up for discussion.

Help at Home intended to be bound to the settlement agreement as reflected in the MOU. Help at Home understood and believed it settled this case on April 8,

2021. **"*As defense counsel appropriately has pointed out in the pending motion [to withdraw], '[t]he parties arrived at a settlement in this matter following a settlement conference on April 8, 2021.'"*** (ECF No. 55, quoting ECF No. 52, pg. 1). (Emphasis added). It intended to pay $1.34 million to the class over an agreed upon time period. It understood that the agreement would include confidentiality and releases. It entered into that agreement to end the litigation at an early stage rather than continue litigating the merits of Lekuntwane's claims. Help at Home did not condition its decision to settle the case on approving the final form of the releases, confidentiality agreement, or the penalty and incentive clauses. The only "conditions" to the settlement were that the court had to approve it (as it required in FLSA cases), and that it "was subject to drafting a final agreement at a later date." (App. 52-53). Those "conditions" do not evidence an intent not to be bound.

Courts do not construe two parties' desire to reduce their preliminary agreements to writing to mean that they do not have an agreement until that final agreement is written:

> A preliminary agreement is binding, despite the desire for a later formal document, 'when the [P]arties have reached complete agreement (including the agreement to be bound) on all issues perceived to require negotiation. Such an agreement is preliminary only in form — only in the sense that the Parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable.' The Second Circuit has established two principles regarding the binding nature of a preliminary agreement: (1) 'if the [P]arties intend not to be bound until the signing of a formal document embodying their agreement, they will not be bound until then; and (2)

18

the mere fact that the [P]arties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event.'

*Suarez*, 2016 WL 6601547, at *3 (internal citations omitted; alterations in the original).

**Finally,** in any event, the "open items" Help at Home argues render the MOU unenforceable are defined in the Final Settlement Agreement, further illustrating that it is a "comprehensive" settlement agreement:

| "Unresolved" Areas in MOU (Appellants' Br., pg. 14; quoting App. 216-17) | Clause in Final Settlement Agreement Resolving That Issue |
|---|---|
| Finalizing the Class List | ¶ 1.16 |
| Address Payment Issues with Defendants' Payroll Company | ¶¶ 4.1-4.3 |
| Address What to do with Uncashed Checks | ¶ 4.14 |
| Address Incentives to Pay Early, with the "Amount to be Determined" | ¶ 4.6 |
| Address Penalties for Late Payment, with the Amount to be Determined" | ¶ 4.5 |
| Address Issues Regarding the Payment of Payroll Tax, and Whether Payments Could be Made on a 50/50 Basis Between Wages and Liquidated Damages | ¶¶ 4.8-4.9 |

19

| Address Issues Concerning a Medicare Waiver | |
|---|---|

(App. 57, 66-69).

By the time Help at Home presented Lekuntwane with the Final Settlement Agreement to sign, the only "item" not addressed in the document was a potential "Medicare waiver." Help at Home evidently no longer required a Medicaid Waiver (or a confidentiality clause) by the time it drafted its Final Settlement Agreement. Accordingly, it cannot be considered "essential." Further, Help at Home does not argue or explain why this outstanding term is essential or material to the determination of whether the Parties had an agreement. It provides no cases that suggest that such a minor term is "essential" to this agreement. It is not a "significant issue such as subject matter, payment, quantity, quality, duration or the work to be done." *450 Federal Road, LLC*, 2024 WL 1739315, at *3.

Help at Home next argues that "[t]his conclusion [that the MOU could not be enforced because it required subsequent negotiations] is buttressed by a review of the face of the MOU, which was a one and a half page documents with 14, short bullet points…." (Appellants' Br. pgs., 15-16). Help at Home is mistaken. It is common for courts to enforce settlement agreements when they merely orally entered into, and for courts to enforce memorandums of understanding. The

abbreviated nature of the MOU here is typical of those types of documents and does not weigh in favor of concluding the Parties did not enter into a contract.

Help at Home next argues that the District Court's finding that the Final Settlement Agreement was enforceable went "beyond the argument raised by Plaintiff, which was that the MOU was sufficiently complete to constitute a binding contract." (Appellants' Br., pg. 16). Help at Home is mistaken for the reasons discussed *supra*, ***III.a.ii***. Help at Home does not articulate what harm is caused to it by the District Court's enforcement of the Final Settlement Agreement against it (beyond being forced to obey the terms of the contract).

Help at Home argues "[t]he fact that the MOU was not an enforceable settlement is further demonstrated by the disputes that arose between counsel" after April 2021." (Appellants' Br., pg. 17). Help at Home continues, arguing "[i]f a final, binding settlement was reached in the MOU on April 6, 2021, then the parties could not have been reporting a possible impasse or deadlock to this Court in August 2021." (*Id.*). Help at Home is mistaken because the parties had agreed to what the essential terms ***would be*** in April 2021. *See Flores v. Urciuloi*, 2022 WL 987353, at *1-4 (E.D.N.Y. Jan. 10, 2022) (FLSA settlement agreement enforced where agreement where the parties agreed to a release but it had not been drafted).

Help at Home relies on the Connecticut Appellate Court's ruling in *Santos v. Massad-Zion Motor Sales Co., Inc.*, 160 Conn.App. 12 (2015) to support this

21

argument. (*Id.* at pgs. 17-18). In *Santos*, the parties agreed to a settlement in principle during a pretrial conference. 160 Conn.App. at 14. The parties agreed to the amount of the settlement, and that it would include a mutual nondisparagement and nondisclosure provisions. *Id.* The parties represented to the court that "all that remained" was for the defendants' attorney to draft a confidentiality provision for the plaintiff's attorney to "***review***." *Id.* (emphasis added). The plaintiff later moved to enforce the settlement agreement. The defendants objected, claiming that the settlement agreement was unenforceable because the plaintiff breached the confidentiality provision before it could be agreed upon. *Id.* "At the hearing, both parties acknowledged that they had entered into a settlement agreement ***subject*** to the incorporation of the confidentiality provision." *Id.* at 16.

On appeal, the defendants argued that the settlement agreement was not clear and unambiguous such that it could be enforced because the confidentiality agreement was incomplete. *Id.* at 17. The Court agreed that the settlement agreement was unenforceable because the agreement required the parties to agree on the language of a confidentiality agreement before it was enforceable. *Id.* at 19. The plaintiff failed to prove that the parties had an agreement on the terms of the confidentiality agreement:

> The only evidence in the record as to the terms of the confidentiality provision appears in Creager's testimony and her notes from the April 28 settlement negotiation, and Connors' statements at the *Audubon* hearing. Creager's notes say, "mutual nondisparagement and

nondisclosure," while, at the hearing, ***the defendants indicated they needed a particularized confidentiality provision to protect themselves and their business against potential future litigation***. Creager's informal notes do not show a 'definite agreement on the essential terms....' Indeed, when asked at oral argument before this court, Creager was unable to articulate precisely what the confidentiality provision was to entail, other than a nondisparagement clause. The trial court made no findings about the terms of the confidentiality provision but instead stated: 'Nondisclosure means you don't disclose anything.' This generalized interpretation of 'nondisclosure' does not provide any guidance as to either party's rights or duties under the provision. Consequently, the only language on the record before us is ambiguous.

*Id.* (internal citations and footnotes omitted; emphasis added).

Help at Home's reliance on *Santos* is misplaced. The *Santos* Court ruled in the defendants' favor because the contract was not complete, according to the parties, until the confidentiality provision was negotiated and incorporated into the agreement. Further, the defendants' insistence on a "particularized confidentiality agreement" was crucial to the agreement. At the time the parties entered into the agreement, another of defendant's employees had a pending lawsuit against them, *id.* at 15 n. 3, and a third employee was considering whether to sue the defendants himself. *Id.* at 15-16. Obtaining confidentiality on specific terms mattered to the defendants. Help at Home does not claim that getting the language of the "open items" resolved was crucial to its agreement.

Help at Home argues that the District Court should not have relied on the Connecticut Appellate Court's ruling in *Wittman* in granting Lekuntwane's motion. (Appellants' Br., pgs. 18-19). Help at Home argues that *Wittman* is distinguishable

23

from the facts in this case because "unlike the agreement in *Wittman*, the MOU here was not [sufficiently complete] and substantial work had to be done after that to finalize a settlement." (*Id.* at pg. 19). Help at Home is mistaken. The District Court correctly relied on *Wittman*.

In *Wittman*, the parties executed an MOU which provided that the defendant would make payments over time to the plaintiffs in exchange for their shares in a company. 202 Conn.App. at 90. The MOU provided that the parties would reduce their agreement to a more complete written document that "would provide, among other things, the necessary terms to effectuate the plaintiffs' transfer of their shares to [the defendant]." *Id.* The parties continued negotiating terms and appeared to reach a settlement, contained in a written settlement agreement. *Id.* When the defendant failed to sign the agreement and missed the first scheduled payment, the plaintiff moved to enforce the settlement agreement, relying on the signed MOU "as evinced by the settlement agreement." *Id.* In opposition, the defendants argued that they never had the funds to buy the shares. *Id.* at 91. The plaintiffs responded that the defendants argued that they did not request that the ability to obtain funding be a condition precedent to the settlement agreement. *Id.*

The trial court enforced the settlement agreement, writing "'although the memorandum of understanding may have been incomplete as to all material terms,

the settlement agreement 'filled in the blanks' as to those issues…'" *Id.* at 95. The

Appellate Court affirmed:

> The court first noted that the memorandum of understanding requires specific payments over time to the plaintiffs to effectuate the purchase of the plaintiffs' interest in the company, and it specifically provides that the terms of the memorandum of understanding will be set forth more fully in another written agreement. Both defendants signed the memorandum of understanding and Attorney Order signed it on behalf of the plaintiffs. The court specifically stated that, "[f]acially, the [memorandum of understanding] sets forth the material terms of what appears to be a comprehensive agreement, intended to resolve all issues presented in the litigation." The court also stated, however, that it recognized that the memorandum of understanding provided that the "scope of acts of default would be determined after the signing of the memorandum of understanding," and that this " 'to be determined' " term, arguably, could preclude a determination that the memorandum of understanding was a final agreement. ***The court further determined, however, that the subsequent agreement drafted by the plaintiffs and agreed to by the defendants, which " 'filled in the blanks' " as to those issues, cured any possible defect in the original memorandum of understanding***. The defendants do not claim otherwise.

*Id* at 101 (quotations and alterations in the original; emphasis added).

Here, just like in *Wittman*, if there was any defect in the parties' MOU, that

defect was "cured" by Help at Home sending its approved Final Settlement

Agreement to Lekuntwane for signing and by Lekuntwane's execution of the Final

Settlement Agreement.

Accordingly, this Court should affirm the ruling of the District Court.

> **b. *The District Court Correctly Held That the Requirement that the Court Approve the Parties' Settlement Did Not Render the Settlement Agreement Unenforceable***

The District Court granted preliminary approval to the Final Settlement Agreement, and then following a Fairness Hearing, granted final approval to that document. The District Court's decision was legally correct. Help at Home argues that the District Court erred in enforcing the settlement agreement because the MOU "was never approved." (Appellants' Br., pg. 20). Help at Home's arguments are mistaken, and this Court should reject them. It does not matter that the MOU was not "approved." The District Court approved the Final Settlement Agreement, not the MOU, pursuant to the procedure required by the FLSA. Help at Home relies on *Williams v. Playscripts, Inc.*, 2024 WL 3823198 (E.D.N.Y. Aug. 13, 2024) in support of its arguments. (Appellants' Br., pgs. 25-26). Help at Home writes:

> Just like in *Williams*, the MOU was not in a form that could be approved by the District Court as a settlement. Just like in *Williams*, the draft settlement document required all parties' signatures to be effective, and said it constituted the 'entire agreement between the parties concerning the subject matter hereof, (App.75) [*sic*] In addition, the agreement described what would happen if the district court did not approve it. (App. 64-65).

(*Id.* at 26).

*Williams* is distinguishable. In that case, the defendant presented the plaintiff with two draft settlement agreements which stated that if the plaintiff failed to sign, the agreements would be "null and void." 2024 WL 3823198, at *2. The plaintiff

refused to sign the agreement, and the defendant moved to enforce an earlier term sheet. *Id.* The district court refused to enforce the agreement:

> The Draft Employment Agreement provides—in bold and capital letters—that the agreement is "null and void if Plaintiff fails to sign and accept it." (Draft Employment Agreement ¶ 22). This language is an unambiguous reservation of Plaintiff's right not to be bound absent her execution of the written agreement. As for the Draft FLSA Agreement, like in *Ciaramella*. the document contains language that it shall "become effective immediately after the eighth (8th) day *after Plaintiff signs this Agreement.*" (Draft FLSA Agreement ¶ 17 (emphasis added)). This acts as condition precedent that has not been fulfilled: the Draft FLSA Agreement is effective only upon Williams's signature, which she did not provide. "By not signing, [Plaintiff] demonstrated that [s]he withheld such consent."

*Id.* at *5 (internal citations omitted; alterations in the original).

This case is unlike in *Williams* for two reasons. First, Help at Home sent its approved Final Settlement Agreement to Lekuntwane for signing and Lekuntwane signed the Final Settlement Agreement. Both Parties intended to be bound. Second, the Final Settlement Agreement does not contain an explicit reservation not to be bound until both parties signed. Help at Home relies on paragraph 7.6, (App. 75) to argue otherwise. That paragraph does not explicitly say that both parties have to sign for the agreement to be effective. It says instead that both parties can execute separate copies of the agreement, and that both copies shall constitute an original

agreement. (*Id.*). Such clauses are common and do not reflect an intention for parties not to be bound until both parties sign such agreements.[2]

Accordingly, this Court should affirm the district court's ruling.

### c. The District Court Did Not Err When it Granted Preliminary and Final Approval

On pages 26-27, Help at Home advances the related argument that the District Court erred in relying on the MOU and Final Settlement Agreement to grant approval. Help at Home writes "[b]ecause, as outlined above, the District Court erred in enforcing the terms of the settlement agreement against Defendants, the District Court also erred in proving [*sic*] Plainitff's preliminary and final motions for approval of the class and collective actions based on the previously enforced MOU and settlement agreement." (Appellants' Br., pg. 27). Help at Home is mistaken for the reasons discussed above.

Accordingly, this Court should affirm the ruling of the district court.

---

[2] Help at Home points to the "merger clause" at issue in *Williams* as further support for its arguments. (Appellants' Br., pg. 26). The "merger clause" here does not speak to whether both parties had to sign it to be effective. In *Williams*, the "merger clause" was further evidence, in addition to the explicit reservation clause, that the parties did not intend to be bound absent signatures. 2024 WL 3823198, at *5.

DATED:     January 27, 2025          Respectfully submitted,

By:  */s/ Richard E. Hayber*
    Richard E. Hayber (ct11629)
    Hayber, McKenna & Dinsmore, LLC
    750 Main Street, Suite 904
    Hartford, CT 06103
    Tel.: (860) 522-8888
    Fax: (860) 218-9555
    rhayber@hayberlawfirm.com
    *Attorney for the Plaintiffs-Appellees*

By:  */s/ Nitor V. Egbarin*
    Nitor V. Egbarin
    Law Office of Nitor V. Egbarin, LLC
    100 Pearl Street, 14th Floor
    Hartford, CT 06103-3007
    Tel.: (860) 249-7180
    Fax: (860) 408-1471
    E-Mail: Nitor@Egbarin.com
    E-mail: NEgbarin@aol.com
    *Co-Counsel for the Plaintiffs-Appellees*

## CERTIFICATION OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements, and Type-Style
Requirements

The undersigned certifies as follows:

1.      This document complies with the word limit requirement of Federal

Rule of Appellate Procedure 32(a)(7)(A). This document also complies with

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Local Rule 32.1(a)(4)

because it contains 7105 words, excluding the parts of the brief exempted by

Federal Rule of Appellate Procedure 32(f).

2.      This document complies with the typeface requirements of Federal

Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal

Rule of Appellate Procedure 32(a)(6) because this document has been prepared in

a proportionally spaced typeface (Times New Roman) of 14 points.

*/s/ Richard E. Hayber*
Richard E. Hayber

## CERTIFICATION OF SERVICE

I, Richard E. Hayber, hereby certify that on January 27, 2025, I caused the Appellee's Brief to be electronically filed with the Clerk of the Court of Appeals for the Second Circuit using the CM/ECF system and to be served on all counsel of record.

/s/ Richard E. Hayber
Richard E. Hayber